Good morning, your honors. May it please the court, I'm Robert Jobe and I'm appearing today on behalf of the petitioner Parmjeet Singh. In this case, both the board and the immigration judge offered just two reasons to support their finding that Mr. Singh had not testified credibly. I'd like to take these in turn. The first had to do with the timing of his second arrest, whether it was before or after the attack on the Golden Temple in June of 1984. This begins, this issue really begins on page 358 of the administrative record where Mr. Singh states in his supplemental declaration that within days of being released from jail from his first arrest, which occurred in February and lasted for three and a half months, the Indian government attacked the Sikh Golden Temple in Amritsar. He goes on to say, at that time, at that same time as the attack, the government began an arrest roundup of political Sikhs and I was quickly arrested again. Could you speak a little louder? Yes, your honor. I can. Not so quickly? Yes, I can. So the critical language there is at the same time as the attack, the government began an arrest and I was arrested at that same time. So we're interested in when did the attack on the Golden Temple occur? Well, this is set forth in the State Department advisory opinion, which is page 1622 of the record. And what that makes clear is that the attack lasted, the attack on the Golden Temple really lasted about a week. Beginning on May 30th, there was an exchange of fire between law enforcement authorities and terrorists at the Golden Temple. And it wasn't until a week later, eight days later, June 6th, that the Indian Army actually invaded and took the temple. And it was on that day that several thousand people were killed. Now, in his testimony, he said, this is on page 147, after a couple days after his initial arrest, I was going to the Golden Temple and we were arrested. Page 149, I think, is the critical passage, because there he says, there was a lot of stuff going on at that time, political activities, and he says, on June 1st, 1984, it was attacked by the government of India, by the security forces, and several thousand people were killed there. It's that June 1st, 1984 date that's our problem, because the attack didn't occur on that day. If you look at that one sentence there, it's actually inconsistent on its face. I don't think that the date of June 1st is your problem. What's your problem is that at one time he said he was arrested before the attack on the Golden Temple, and at another time he said he was arrested during the attack. Right. It all depends on what you're referring to when he says the attack. Normally, when we talk about the Golden Temple attack, we're not talking about May 30th, May 31st, June 1st. We're just not. We're talking about the June 4th through 6th. Really, June 6th is the day of the big attack, and that's the day where several thousand people were killed. When he talks about, I was arrested at the time or before, you have to be clear about, are you talking about the full-blown attack on the Golden Temple, or are you talking about the beginning of Operation Blue Star? Which goes back to May 30th, a week before the full-blown attack. And so I guess our position is there's nothing really inconsistent here. He testified throughout that at the time of his arrest, there were activities at the Golden Temple. It was at the time of the attack. And actually, if you look at the State Department chronology, the Central Reserve Police surrounded the Golden Temple on May 31st. That's a full week before the attack. And there was fighting beginning on May 30th, eight days beforehand. So when he says, I was arrested at the time of the attack, that could go back to May 30th. And if it's May 30th, that's completely consistent with his testimony that he was arrested in February, held for three and a half months, released, and then arrested a couple days later. My problem, reading my notes over, is when he was first seeking asylum in 1991, he wrote that he was arrested once by the Indian authorities in 1984. That's right. And then in his addendum, he said he was arrested three times, twice in 1984, once in February, and once in June, and once again in June 1986. You'll find that at AR-1208-11. His explanation for this inconsistency was that he was afraid to speak out against the Indian government. But he was not afraid to speak out against the Indian government in 1991 when he said that he was arrested once. Your Honor, I actually think that what you're referring to, there is a discrepancy here between what he said in his initial application and that he corrected that and he mentions all three arrests. But actually, that's not something that the immigration judge relied on, nor did the board. That's an issue insofar as there's a discrepancy here. That's not something that this court can use to sustain the adverse credibility finding, because neither the IJ nor the board, in fact, relied upon it. They relied upon this discrepancy at the time of the incident. Exactly. They relied on this discrepancy, you know, which really goes back to the mere fact that this, you know, it's a matter of language. And when we talk about the attempt, he says, I was arrested at the time of the attack. Well, yes, the Golden Temple was under attack on May 30th or May 31st when he was arrested. The full-blown attack, however, did not occur until later, and so it's also correct for him to say, I was arrested before the full-blown attack. Wait a minute. You just argued that the IJ never said anything about the second or the discrepancy at all. That's not quite true, is it? Because when he discussed the wife's, the estranged wife's testimony, he pointed out the fact that there was no mention whatsoever. Well, that's a different matter. He did rely on the wife's statement, and he said that, I also am troubled by the fact that this second arrest wasn't mentioned by your wife, her ex-wife, in her letter. Yes, and I'd like to address that if I can. Well, he did say it, but he's talking about the fact that sometimes he was arrested once and sometimes twice and sometimes three times. No. What he said, Your Honor, actually, was that it wasn't mentioned in the wife's letter, and his explanation for the wife not mentioning it in her letter was not plausible. It's the failure to offer a plausible explanation as to why his wife wouldn't mention it that both the IJ and the board relied upon, and that's the issue before the court. Yeah. Now, in response to that, he said, Well, actually, I wasn't married at the time of that second arrest. My wife wasn't with me. She knew about my first arrest because it occurred in the newspaper, and having read it in the newspaper, she raised that with me. She knew about my last arrest because she was actually physically present at the time of that arrest, but we never discussed my second arrest. The judge said that's not plausible. The BIA said that's not plausible. But they didn't explain why they find that not plausible. You know, on this, go ahead. I don't want to cut you off. You don't think that the failure to mention an arrest to your wife or to your wife-to-be is something that's major? I think that in our culture, in the United States, of the generation of which I come, yes. But I can guarantee you that having dealt with thousands of Sikhs over the years, I don't find it the least bit implausible that a religious Sikh, somebody who's active in this Khalistan movement who probably is in an arranged marriage, would not have thought to mention even his political activities to his wife, let alone an arrest? No. I don't find that the least bit implausible. I just want to, just by way of sort of illustrating that, I just want to give you an example from my own life. And I know it's not in the record, but it just the judge's point on this, I think, is speculative, and I know that you come from that Western perspective and you're going to think that's strange. But when I have dinner, I've worked on thousands of these cases. More often than I'd like, I'm invited to dinner parties. When I go to these dinner parties with the Sikh families, the men all sit together and we talk politics. The women are not, they cook the food, they bring the food to the table, and then they go back to the kitchen. They're not even part of the discussion. They're not included in these discussions about politics. Having seen that over and over again, it's not the least bit plausible to me that this guy would not have mentioned not only his arrest, but even the extent of his political activities to his wife. They don't consider that to be a topic of conversation with their wives. And I know that's difficult for you to believe, but the bottom line is here, the judge, all he said and all the BIA said on this is it's unbelievable. But why? If you're going to say it's unbelievable, you've got to give me a reason, a reason that actually assesses it in the context of the culture in which it occurs. And he doesn't do that here. Well, all right, I hear you. I'll save my remaining 53 seconds. May it please the Court. My name is Jeffrey Liest. I'm appearing on behalf of the Respondent. It's incumbent upon an alien seeking asylum to present a credible and specific claim for relief. In this case, the agency found two specific instances which are actually very much interrelated, which undermine the alien's credibility. The first, which has been discussed, is the alien's confusing testimony regarding when he was arrested or allegedly arrested in connection with the June 1984 Operation Blue Star. Why is it so inconsistent, though? Well, because it's inconsistent to say that you are arrested before and then during something else. And the ---- It's just a matter of semantics. It is, but it's also incumbent upon the alien to present a clear and concise claim. And if the alien's claim is confusing and the immigration judge doesn't know what to believe, that's where there's a problem. And the problem in this case was actually magnified because when the alien looks to the ---- or, excuse me, the immigration judge looks to the corroborating documents, this arrest is mentioned nowhere. Not only is it absent from his wife's affidavit, it's absent from his sister's affidavit, and it's absent from, I believe it's Jagger Singh's affidavit. So this is not mentioned anywhere. Well, let's put things in perspective. Sure. The IJ hearing took place when, 2005, 2006? I believe it was 2004 through 2005. 2004, 2005. All right. They're talking about events which occurred 20 years before, 1984. The discrepancy seems to be, if I hear the government correctly, that at one point he said he was arrested, he was talking in 2004, I was arrested 20 years ago, a week before the Golden Temple. And on another occasion he says, I was arrested at the same time as the Golden Temple attack. Mm-hmm. 20 years have passed. Is that a significant inconsistency? The agency found it was consistent in this case because of the fact that it was such a momentous occasion, both in terms of the Petitioner's own life and the country as a whole. A momentous occasion could be Pearl Harbor, right? Well, that's what the immigration judge actually compares it to in this case. I enlisted before Pearl Harbor or I enlisted at the time of Pearl Harbor. Is that such a big discrepancy? I think it's a little bit different from that scenario because in this case the alien is actually attributing himself to being harmed as a result of this happening. So whether or not he was actually harmed before the incident, if he was arrested before this started or if he was actually caught up in the entire process of this going on, I think it is a significant difference. It just sounds nothing like, but to me it sounds like speculation and conjecture about what this guy should remember. Jeff Beah is noting here. But I think it's all... Well, the BIA says in that regard the discrepancy between June 1st and June 4th is only a few days. Such a discrepancy would be relatively minor. If a discrepancy of June 1st to June 4th is relatively minor, why is the discrepancy a week before the Golden Temple or at the same time of the Golden Temple attack relatively minor? I believe the board is concerned with the chronology. I mean, it happened 20 years ago. Right. I think the board is concerned with the chronology of whether it occurred before or during. I think that the difference of days, if it's a semantic argument as to when, you know... Would that go to his political persecution, whether he was arrested before or during? Not necessarily, but it... Not necessarily, right? But the problem is... So why were they, quote, concerned? Well, they were concerned about this, and I think the concern was magnified by the fact that this event was absent from any other documents which he submitted. I think that if you look at these in isolation, it might not be a big deal, but when you look at the immigration judge was confused about the testimony in terms of when this actually transpired, and he looks at the supporting documents, and this incident is absolutely absent from anything to support it. What was absolutely absent? In none of the documents that he submits, none of the background documents, none of the affidavits he submits, is there any mention of this second arrest? They mention the first arrest, which was in February of 84, a second arrest in June of 86, but not one of them actually mentions the second arrest where he gets arrested in June of 1984. And his wife doesn't mention the second arrest, either. Right. She doesn't mention it, and there's two other affidavits he submits, one from his sister and one from, I believe his name is Jagir Singh, and they both say in 84 he was arrested because of the Article 25 burning, in 86 he was arrested at his home, but nothing mentions the second arrest. So you're saying that the I.J. was justified in saying, wait a minute, you said you were arrested in February of 1984. That was at least three to four months before the Golden Temple incident, and that would be totally different. Fine. You say you were arrested in February of 1984, and then your documents don't say anything about being arrested in June, May or June of 1984. That's just not consistent. Well, the problem is that there's three arrests he talks about, but only two of them are mentioned by anybody else. The February arrest is mentioned in the other three affidavits. The June arrest is mentioned in the other three affidavits, or excuse me, the 86 arrest is mentioned in the other three affidavits. But nothing apart from his own testimony and his own personal statement mentions an arrest in May or June of 1984. The Petitioner also raises a second argument that even absent a credible testimony, a credible evidence, that the background evidence in this case supports a grant of asylum. And that misconstrues the case law in this case. In order for you to – if you don't testify credibly, if there's problems with your credibility, the Court can look to the evidence, the documents you submit in an attempt to rehabilitate your credibility. But it's necessary for those documents actually to address those issues. And the documents which were submitted, the three affidavits, they don't mention the issue which is at hand here, which is the lack or the confusion about the June of 1984 arrest. The other documents concerning conditions in India, they put the things into context, but they can't actually support his claim this happened in 1984 in June. I'm not sure I follow that argument, but let me – so if we were to conclude that substantial evidence does not support the Board's adverse credibility decision, what do you understand counsel to be asking for? I believe it would be a remand back to the Board for a determination of the merits of the case in terms of the persecution. So we'd have to go back to see if there was an on-account of and on the grounds. Right. I mean, the Board's decision – right. The Board's footnote does indicate that they found persecution, or they would have. Yes. Right. But it doesn't mention an on-account of, and it also says that they would send it back to the immigration judge themselves to determine whether or not there have been changed country conditions. Right. Okay. I didn't mean to cut you off. Did you have anything else? That's it. If there's no further questions. Thank you. Okay. Mr. Judge, you have a minute. As is not uncommon, the government's trying to bolster the judge's adverse credibility finding by using other alleged discrepancies here in the record. And I agree that there's an issue here about his failure to mention that second arrest in some of these other documents, but the judge didn't rely on that. To me, that goes to what's the – What I don't know is when the second arrest occurred, not if the second arrest occurred. Well, the judge questioned whether the second arrest actually occurred because he also said it's not mentioned in the wife's affidavit. So there is that inference to be drawn there. I see. But it's not mentioned in these other documents. The judge didn't rely on that. That goes to remedy, and that goes to your question. Yes. You know, it seems to me that it doesn't have to go back exclusively for the question of whether it's on account of or rises to the level of persecution. You don't have to say that on remand they have to treat this guy's testimony as credible. I mean, in an administrative proceeding like this, the board offers two reasons. They don't stand up. It goes back, and the board is free to reexamine the question of credibility if it sees fit. And I don't see any reason why they wouldn't be able to do that here. That's necessary in this case because these discrepancies that the government is pointing to, he was never asked about those discrepancies, never had any opportunity to explain, well, it's not in this affidavit for this, that, or the other reason. And that is obviously a key ingredient for any determination. So what you're saying is that what we should do, if we agree with your argument, is that we would determine that the board's decision does not support, adverse credibility, its adverse credibility decision here is not supported by substantial evidence and remand it back for further proceeding. Right. These two reasons are not substantial. It goes back, and you can reexamine the issue of credibility. Thank you, Your Honor. Thank you. We appreciate the arguments. Thank you.
judges: Duffy, Paez, Bea